## 1886. GRAY *v.* THE STATE.

1. "In a criminal proceeding the pendency of a former indictment for the same offense is no ground for a plea in abatement or in bar, although the accused may have been arraigned thereon and filed a plea. . . Where several indictments for the same offense are pending against the same person, it is immaterial upon which he is first tried. Whenever he has been acquitted or convicted upon any one of them, he can plead such acquittal or conviction in bar of a prosecution of any of the others." *Irwin* v. *State,* 117 *Ga.* 706 (45 S. E. 48).
2. It was not error to overrule the demurrer.
(*a*)    The indictment being drawn in the language of the statute, the offense charged could properly be denominated as a felony, because the statute provides for punishment by imprisonment and labor in the penitentiary. The statute, therefore, is not void by reason of the fact that the legislature failed to declare the inhibited acts to be a crime.
(*b*)    The terms "Southern Express Company" and "Western Express Company" import, each of itself, a corporation, and obviate the necessity of alleging them to be such.
3. In the absence of a written request, the court is not required to charge the jury in a criminal case the law applicable to any theory which is dependent entirely upon the defendant's statement.
4. The identity of a human being necessarily depends upon many characteristics peculiar to the individual sought to be identified which are indescribable in language, and yet so distinct that minor dissimilarities obliterate and overrule a general similarity. The identity of a named individual may be more satisfactorily shown by the opinion of a reliable witness, drawn from traits which he can not fully describe, than by circumstances of identity which may be possessed by a multitude in common with the individual sought to be identified. But, after all, the question is one of fact, and wholly for the jury.
5. The fact that a trial judge, in sentencing a prisoner, expresses his belief in the defendant's guilt, or his opinion that the verdict of guilty was deserved, does not authorize the inference that the accused did not have a fair and impartial trial. An expression on the part of the judge upon the merits of the case, after verdict and when imposing sentence, is not subject-matter of review in the pending case, though such remarks might be improper as injuriously affecting the result in some other and different case.

Indictment for obtaining money on false writing, from Cobb superior court—Judge Morris. April 3, 1909.

Argued June 9,—Decided July 6, 1909.

*H. B. Moss,* for plaintiff in error.

*J. P. Brooke, solicitor-general,* contra.

RUSSELL, J. It appears from the record that two indictments, No. 1586 and No. 1598,—had been returned by the grand jury of Cobb county against the defendant, both charging the same offense and based upon the same facts. The defendant, without being formally called upon to answer in case No. 1586, waived formal arraignment and entered a plea of not guilty upon that indictment. When No. 1598 was called for trial, he announced ready and filed a demurrer to the indictment, which was overruled. He then filed his plea of not guilty and signed a waiver of formal arraignment, and the jury was impaneled and sworn. At this point and before the introduction of any evidence, he offered a plea in abatement, which the court declined to entertain, and, therefore practically overruled. The plea in bar or abatement was based upon the ground that there was a former indictment against him, pending in the court, for the same offense charged in this indictment, to which he had filed a demurrer and had pleaded not guilty, and that, the former indictment not having been tried, he could not be prosecuted upon a subsequent indictment charging the same offense. Attached to the plea was a copy of the former indictment. The ruling upon the plea, as appears in the record, was based upon the ground that a plea of not guilty upon indictment No. 1586, if entered, was entered when the case was not called and had not been sounded for trial, and that even if the two cases were identical, this was the first time the court had ordered the case to trial. After the overruling of the special plea, a trial was had and the defendant was convicted. His motion for new trial was overruled, and exceptions are taken to the judgment refusing a new trial, to the overruling of the demurrer, and to the refusal to entertain the plea in abatement.

1. The court properly refused to entertain the plea in abatement. A defendant in a criminal trial is not called upon to plead before his case is sounded by the judge and the trial ordered to proceed. He is not called upon to plead, until the court has passed upon any motion for postponement or continuance which

he may desire to offer. A plea which is filed without the knowledge of the judge and before the case is sounded for trial is a nullity. As this was the first time that the judge had sounded the case against this defendant, he had never legally entered the plea. His attempt to plead could have been vitalized, if the judge had preferred to give it that direction, by calling No. 1686; but until he was called upon by the court, any efforts in that direction of his own motion were unauthorized and nugatory. But even if a defendant could plead without the knowledge of the court, and had waived formal arraignment, this would not prevent the court from proceeding to try any other indictment then pending involving the same offense, for the reason that the defendant has not by his mere plea, or even by arraignment, been placed in jeopardy, and there is no such plea to an indictment as an autrefois arraign, in this State. The pendency of a formal indictment in the same case does not furnish any support to a ground for a special plea in bar or abatement. In *Doyal* v. *State,* 70 *Ga.* 134, the distinction is clearly drawn between a plea of former jeopardy and a plea of former arraignment, and it is squarely decided that the latter does not exist in this State. In discussing the question Judge Hall says: "Had there been an issue as the law requires in all criminal cases, and one juror only empanelled and sworn, the case would then have been submitted, and no nolle prosequi could then be entered as of right, but only with the consent of the accused. Then the jeopardy of the accused begins, and not until then. Whenever a juror has been selected and sworn, the cause must proceed to verdict, unless one of those contingencies should occur provided for by statute. *Bryan* v. *State,* 34 *Ga.* 323, 325. That there is no such plea to an indictment as the pendency of a former indictment in the same case, or as *autre fois arraign,* we are well satisfied; indeed, this was expressly so ruled in the case of The King *v.* Swain & Jeffreys, Foster's Crown Law, 104, 105, 106, citing 10 St. Tri. 36; Cro. Car. 147; 3 Bur. 1468." The ruling in *Irwin* v. *State,* 117 *Ga.* 706, which is quoted in the headnote of this decision, is exactly in point and is supported by Clark's Criminal Procedure, 115, 377, 407, and cases cited, and Archbold's Criminal Practice and Pleading, 336. It is well settled that even though there be several indictments for the same offense pending against the same person, it is not only discretionary with

the court as to which shall first be tried, but also immaterial to the defendant; because, if he is either acquitted or convicted, he can plead his former jeopardy.

2. (a) The defendant demurred to the indictment generally, upon the ground that it failed to charge a felony under any statute declaring the acts therein alleged to be a felony; and upon the further ground that §247 of the Penal Code fails to declare that the acts therein embodied or penalized constitute a felony. Section 247 of the Penal Code (which was originally section 14 of the 7th division of the Penal Code, as contained in "An act to reform, amend and consolidate the penal laws of the State of Georgia," approved December 23, 1833 (Acts 1833, pp. 171-2)), declares that, "If any person shall designedly, by color of any counterfeit letter or writing, made in any other person's name, or fictitious name, obtain from any person money, or other valuable thing, with intent to defraud any person, mercantile house, body corporate, or company of the same, he shall be punished by imprisonment and labor in the penitentiary for not less than two nor longer than seven years." The point is made that the statute nowhere declares the commission of the forbidden acts to constitute a felony or gives any other denomination to the offense. Inasmuch as the generic term "felony" is defined in the code (as it was originally in the 13th section of the 1st division of the act of 1833 to which we have referred), and as the punishment prescribed in §247 of the Penal Code comes within the class of punishments which distinguish felonies from misdemeanors, the declaratory part of the act is necessarily implied from the punishment inflicted, and the words "shall be guilty of a felony" must necessarily be supplied in connection with the punishment. While, as insisted by counsel for plaintiff in error, there may be an omission of the declaratory part of the law, prescribed by Blackstone as one of its essential ingredients, the ellipsis is so inevitably supplied from the context that the validity of the law is not affected. Indeed, the same peculiarity is found in §§238, 239, 240, 241, 242, 243, 244, 245, 246, and 251, all of these sections being taken from the Penal Code enacted in 1833. The indictment conforms to §929 of the Penal Code, and was, therefore, sufficiently technical to withstand the demurrer.

(*b*) Another ground of the demurrer was based upon the fact that the Southern Express Company and the Western Express Company were not alleged to be corporations, it being contended therein that the indictment failed to disclose whether they were persons, mercantile houses, or bodies corporate or companies. The names "Southern Express Company" and "Western Express Company" so clearly import corporate bodies as to preclude the necessity for an allegation of their corporate existence. Their corporate character is so necessarily implied that if the evidence had disclosed that they were not corporations, the defendant could have relied upon the variance between the allegation and the proof.

3. Complaint is made in one of the grounds of the motion for new trial that the court failed to instruct the jury upon the law applicable to the defense of alibi, and that as this was the defendant's only defense, it was the duty of the court to present the law applicable thereto, even without request therefor. It is true that it is the duty of the court to present the law applicable to a defendant's defense, even without request, and failure to do so is such error as requires the grant of a new trial. But it has frequently been held in decisions of the Supreme Court, by which we are absolutely bound, that the court is not required to present to the jury any theory wholly dependent upon the defendant's statement, unless requested so to do; and these decisions render the ruling first stated nugatory, where the defendant's sole defense is dependent solely upon his statement. In other words, the rule which requires that defenses be presented in the judge's charge to the jury, and that they be instructed upon the law applicable thereto, refers only to those cases where the defense relied upon is supported by *some* sworn testimony.

4. The identity of a human being necessarily depends upon many characteristics peculiar to the individual sought to be identified which are indescribable in language, and yet so distinct that minor dissimilarities obliterate and overrule a general similarity. The identity of a named individual may be more satisfactorily shown by the opinion of a reliable witness, drawn from traits which he can not fully describe, than by circumstances of identity which may be possessed by a multitude in common with the individual sought to be identified. But, after all, the question is one

of fact, and wholly for the jury. It might be extremely difficult for a man with a wife of medium size, plump build, blue eyes, brown hair, and fair complexion to give to a jury any marks of identity by which they, never having seen his wife, would be able to distinguish her from a thousand other women who might come within the same general description, and yet it would be hardly possible that such a man would not be able to distinguish his wife or recognize her even in a gathering of a thousand women. If such a man is a credible witness, his opinion that the lady sought to be identified was his wife would really be more reliable than the testimony of some other witness who would only be able to describe her by features which might be possessed in common with her by ten thousand others. After considering all that has been said by counsel as to the non-reliability of the evidence by which the State sought to identify the plaintiff in error as the man who committed the offense of fraudulently obtaining money upon the fraudulent express order, we can only say that it was a question of fact for the jury. Even if the statements of the witnesses be improbable, they are neither impossible nor incredible; and a witness may truthfully swear that he recognizes a named individual as one whom he has seen on a previous occasion, without being able to give any logical reason for the faith that is in him, and yet not be mistaken in his identification.

5. The fact that a trial judge, in sentencing a prisoner, expresses his belief in the defendant's guilt, or his opinion that the verdict of guilty was deserved, does not authorize the inference that the accused did not have a fair and impartial trial. An expression on the part of the judge upon the merits of the case, after, verdict and when imposing sentence, is not subject-matter of review as to that case, though, if such remarks injuriously affect the result in some other and different case, exception might be taken thereto by some other defendant. *Judgment affirmed.*