# Illinois Official Reports

## Supreme Court

---

### *People v. Fiveash*, 2015 IL 117669

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DAVID FIVEASH, Appellant. |
| Docket No. | 117669 |
| Filed | September 24, 2015 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Ellen Beth Mandeltort, Judge, presiding. |
| Judgment | Appellate court judgment affirmed.<br>Cause remanded |
| Counsel on Appeal | Larry Wechter, of Geneva, for appellant.<br><br>Lisa Madigan, Attorney General, of Springfield, and Anita Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Annette Collins and Michelle Katz, Assistant State's Attorneys, of Chicago, of counsel), for the People. |
| Justices | JUSTICE KILBRIDE delivered the judgment of the court, with opinion.<br>Chief Justice Garman and Justices Freeman, Thomas, Karmeier, Burke, and Theis concurred in the judgment and opinion. |

## OPINION

¶ 1       In this appeal, defendant argues the appellate court erred by interpreting section 5-120 of the Juvenile Court Act of 1987 (705 ILCS 405/5-120 (West 2004)) to permit him to be tried in criminal court for acts he allegedly committed while 14 or 15 years old even though no charges were filed until he was 23 years old. After carefully reviewing the Act and the other relevant statutory provisions and case law, we affirm the appellate court's judgment and remand the cause to the trial court for further proceedings.

¶ 2                                         I. BACKGROUND

¶ 3       In May 2012, then 23-year-old defendant David Fiveash was charged in the circuit court of Cook County with two counts each of aggravated criminal sexual assault and criminal sexual assault. The acts involved the sexual penetration of the vagina and mouth of his 6-year-old cousin, P.A., between January 1, 2003 and January 1, 2004, when he was 14 or 15 years old. At that time, both he and P.A. were living in the same residence.

¶ 4       The Mt. Prospect police department was notified of the possible sexual abuse of P.A. on April 17, 2012, when a police department in Indiana provided information obtained during an interview with another one of defendant's cousins. After being questioned by the Mt. Prospect police, defendant gave verbal and written statements regarding the allegations involving P.A.

¶ 5       At the subsequent grand jury proceedings, testimony based on statements from defendant, the victim, and other witnesses indicated that defendant had "admitted to placing his penis inside the mouth and vagina of the victim." On the condition that he not have contact with anyone under the age of 18, bond was set for defendant, who was certified to teach grades 6 through 12 but could substitute teach for grades kindergarten through 12 and had been teaching part-time at two schools.

¶ 6       Defendant filed a motion to dismiss the indictment, arguing that section 5-120 of the Juvenile Court Act (705 ILCS 405/5-120 (West 2004)[1]) gave the juvenile court "exclusive jurisdiction" over offenses allegedly committed when he was 14, barring his prosecution in criminal court. Defendant also maintained that he could not be prosecuted in juvenile court because he was already over 21. *In re Jaime P.*, 223 Ill. 2d 526, 539 (2006). Consequently, he requested the dismissal of all charges against him.

¶ 7       After a hearing in October 2012, the trial court granted defendant's dismissal motion, finding that he was not subject to prosecution in either juvenile court or criminal court. The court determined that defendant could not be prosecuted in either juvenile court, because he was then 23 years old, or in adult criminal court, because a statutory transfer from juvenile court was no longer possible. Although the trial court found the result was unjust, absurd, and clearly unfair to the victim, it concluded the applicable statutes did not allow for prosecution in

---

[1]The offenses allegedly occurred in 2003, making the supplemental 2003 version of the statute applicable. Because that version is identical to the one in the 2004 Illinois Compiled Statutes, we cite simply to the 2004 statute.

either court. The court subsequently denied the State's motion to retain defendant's bond pending appeal.

¶ 8    On appeal, the appellate court construed the language in section 5-120, defining the "exclusive jurisdiction" of the juvenile court. Substituting the statutory definition for the section's use of the word "minor," the appellate court read section 5-120 as barring criminal proceedings only against defendants under the age of 21 for offenses they allegedly committed while under the age of 17, with certain inapplicable exceptions. Because defendant was 23 when the indictment was entered, the appellate court concluded section 5-120 did not apply. Consequently, it held that the juvenile court did not possess exclusive jurisdiction over the matter. The court also determined that the plain language of section 5-120 was consistent with the rationale in *In re Luis R.*, 239 Ill. 2d 295 (2010), and distinguished *People v. Rich*, 2011 IL App (2d) 101237, on both its facts and law. Accordingly, the court reversed the dismissal of defendant's indictment and remanded the cause for trial in adult criminal court. 2014 IL App (1st) 123262, ¶ 27. This court allowed defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Jan. 1, 2015).

¶ 9                                            II. ANALYSIS

¶ 10    Defendant argues that the appellate court erred by reinstating his indictment because it held that a person over the age of 21 at the time of indictment could be prosecuted in adult criminal court for offenses allegedly committed when he was a minor at least 13 years of age. The narrow question before this court is whether defendant may be subject to prosecution in criminal court for acts he allegedly committed when he was 14 or 15 years of age. Because this issue involves the proper construction of the Juvenile Court Act, and section 5-120 in particular, it presents a question of law to be reviewed *de novo*. *People v. Baskerville*, 2012 IL 111056, ¶ 18.

¶ 11    The critical starting point for the resolution of any question of statutory construction is the plain language of the statute, in this case section 5-120 of the Act. *People v. Almond*, 2015 IL 113817, ¶ 34. The cardinal rule of statutory construction, subordinating all other rules, is to determine and give effect to the intent of the legislature. The most reliable indicator of that intent is the language used in the statute. Whenever possible, that language should be given its plain and ordinary meaning. *People v. Hanna*, 207 Ill. 2d 486, 497-98 (2003).

¶ 12    Here, the appellate court's statutory analysis looked to the Act's definitions of the words "adult" and "minor" and inserted those definitions into section 5-120. 2014 IL App (1st) 123262, ¶ 27. Defendant argues, however, that the court erred by applying the statutory definition of "minor" because the legislature did not intend to invoke that meaning when it amended the prior version of the statute. Noting that the predecessor to section 5-120 used the words "boys" and "girls," he claims the legislature substituted "minor" in response to our decision in *People v. Ellis*, 57 Ill. 2d 127 (1974). In *Ellis*, 57 Ill. 2d at 133, we ruled that the legislature could not constitutionally establish different threshold ages for the criminal prosecution of boys and girls. According to defendant, the legislature substituted "minor" for "boys" and "girls" in section 5-120 because it was simply "a word with a neuter gender to describe all persons under the age of 17."

¶ 13    We are not persuaded by defendant's explanation of the legislature's word choice. When a term is defined within a statute, that term must be construed by applying the statutory

- 3 -

definition provided by the legislature. *People v. Chenoweth*, 2015 IL 116898, ¶ 21. Moreover, if the legislature merely sought a gender neutral substitute for "boys" and "girls," it could have readily chosen another term that was not already defined in the Act, such as "juvenile," "individual" or "anyone." Instead, the legislature specifically chose "minor," a word expressly defined in the Act (705 ILCS 405/5-105 (West 2004)). Accordingly, in the absence of clear evidence exhibiting a contrary legislative intent, section 5-120 must be read to incorporate that meaning of "minor." *Chenoweth*, 2015 IL 116898, ¶ 21.

¶ 14    Returning to the specific language used in the Act, we note that the Act's purpose and policy limit its scope to "minors" who are not otherwise excluded from its coverage. 705 ILCS 405/1-2 (West 2004). In turn, the Act defines a "[m]inor" as "a person under the age of 21 years subject to this Act" and, conversely, an "[a]dult" as "a person 21 years of age or older." 705 ILCS 405/1-3(2), (10) (West 2004). Pursuant to these definitions, both defendant and the State acknowledge, and we agree, that the juvenile court has no authority over defendant because he was 23 years old when the instant proceedings were instituted and was, therefore, no longer subject to the Act's provisions.

¶ 15    Because the focus of the parties' arguments is largely on the "exclusive jurisdiction" provision in section 5-120, we next address the specific language of that section. Replacing the word "minor" with its statutory definition, as we must, section 5-120 properly reads:

> "§ 5-120. Exclusive jurisdiction. Proceedings may be instituted under the provisions of this Article concerning any [person under the age of 21 years subject to this Act] who prior to the [person under the age of 21 years subject to this Act['s]] 17th birthday has violated or attempted to violate, regardless of where the act occurred, any federal or State law or municipal or county ordinance. Except as provided in Sections 5-125, 5-130, 5-805, and 5-810 of this Article,[2] no [person under the age of 21 years subject to this Act] who was under 17 years of age at the time of the alleged offense may be prosecuted under the criminal laws of this State." 705 ILCS 405/5-120 (West 2004).

For his part, defendant claims the last sentence of section 5-120 bars his prosecution outside juvenile court because, in the absence of an applicable exception, it does not permit any minor under the age of 17 at the time of the offense to be prosecuted in criminal court. We disagree.

¶ 16    Defendant's interpretation ignores the limiting phrase "subject to this Act" in the statutory definition of "minor" the legislature used to describe the group of persons under 21 constituting "minors" for purposes of the Act. Paraphrasing the key sentence in section 5-120, no person under 21 who is subject to the Act, and who was younger than 17 when the alleged offense was committed, may be prosecuted in adult criminal court. Defendant fails to meet these criteria. He is neither under 21 nor subject to the Act, as expressly conceded in defendant's brief. Consequently, the last sentence of section 5-120 does not bar defendant's

---

[2]None of these statutory exceptions are applicable here. Section 5-125 addresses concurrent jurisdiction over traffic, boating, fish and game, and municipal or county ordinance violations. Section 5-130 excludes from juvenile court prosecution certain serious offenses committed by minors who are at least 15 years old. Sections 5-805 and 5-810 set out the requirements for mandatory, presumptive, and discretionary transfers from juvenile court to criminal court, as well as extended jurisdiction juvenile prosecutions. These transfer procedures do not apply here because the requisite petitions were not filed while defendant was subject to the juvenile court's authority.

prosecution in criminal court for offenses he allegedly committed when he was 14 or 15 years old.

¶ 17   Defendant also relies heavily on his view of the legislature's "comprehensive" three-tier scheme regulating the prosecution of persons under 17, including the availability of mandatory, presumptive, and discretionary transfers from juvenile court to criminal court. He faults the appellate court for failing to consider that scheme in its analysis. In defendant's view: (1) persons under 13 at the time of an offense may never be convicted as adults; (2) those between 13 and 17 are generally prosecuted in juvenile court and are subject to the juvenile justice system only until they turn 21; and (3) those 17 or older are handled exclusively in criminal court.

¶ 18   Defendant contends that the State's interpretation of section 5-120 improperly creates a new judicial transfer mechanism between juvenile and criminal court. Admitting that a broad range of transfer options from juvenile to criminal court already exists, he maintains that the legislature provided only for the "aging out of" defendants from juvenile court, not their "aging into" adult criminal court, leaving him beyond the reach of State prosecution.

¶ 19   While the legislature's scheme may indeed be "comprehensive," defendant's argument fails to recognize that if he had been charged while a minor, he could still have been properly tried as an adult through the Act's discretionary transfer mechanism because he was at least 13 years of age at the time of the alleged offenses (705 ILCS 405/5-805(3) (West 2004)). Thus, the application of the legislative scheme in the Act could well have subjected him, while still a juvenile, to trial in adult criminal court, the very fate that he asks this court to reject outright now that he is an adult.

¶ 20   Defendant's view effectively allows him to escape prosecution for four felony sexual offenses[3] allegedly committed against a six-year-old family member. As the trial court stated, his position creates an absurd result that contradicts the legislature's express intent to hold those who commit criminal offenses directly accountable for their actions as expressly stated in the Act and the Criminal Code of 1961 (Code) (720 ILCS 5/1-1 (West 2004)).

¶ 21   Adjudication in juvenile court is not a matter of constitutional right. The legislature created the juvenile court and defined its authority. No other right to adjudication in juvenile court exists. *In re M.I.*, 2013 IL 113776, ¶ 46. As the legislature stated, the Act was enacted, in part, "[t]o hold each juvenile offender directly accountable for his or her acts" (705 ILCS 405/5-101(1)(b) (West 2004)), a fundamental purpose that was emphasized even more strongly with the legislature's amendment of the Act in Public Act 90-590, effective January 1, 1999. *People ex rel. Devine v. Stralka*, 226 Ill. 2d 445, 457-58 (2007). In a similar fashion, the Code subjects any "person" to criminal prosecution by the State "for an offense which he commits, while either within or outside the State, by his own conduct or that of another for which he is legally accountable," with a "person" being broadly defined as "an individual, public or private corporation, government, partnership, or unincorporated association." 720 ILCS 5/1-5(a), 2-15 (West 2004). Thus, the legislature has effectively enacted a seamless set of provisions committed to the uniform enforcement of the criminal laws of this state.

---

[3]The two aggravated criminal sexual assault counts are Class X felonies (720 ILCS 5/12-14(b)(i), (d)(1) (West 2004)), and the two criminal sexual assault counts are Class 1 felonies (720 ILCS 5/12-13(a)(3), (b)(1) (West 2004)).

¶ 22    Contrary to the legislature's express intent to hold all persons accountable for their offenses, however, defendant's interpretation of section 5-120 creates a strong and perverse incentive for juvenile offenders to take affirmative action to conceal their offenses or to evade apprehension until they turn 21 and would no longer be subject to prosecution. While defendant asserts that nothing in the record indicates he attempted to evade prosecution, that argument is beside the point. We reject defendant's position not because he personally took advantage of the incentive to evade prosecution or hide his offenses created by his construction of the statute but, rather, because the effect of that interpretation runs contrary to the clear intent of the legislature as stated in the plain statutory language. *People ex rel. Devine v. Sharkey*, 221 Ill. 2d 613, 617 (2006) (stating "[w]here the plain language of the statute clearly reveals the legislature's intent, that intent must prevail, and no resort to other interpretive aids is necessary").

¶ 23    To counter the absurdity of interpreting section 5-120 to bar defendant's prosecution forever, defendant maintains that "[a]ny time-based limit on filing criminal charges is necessarily arbitrary in nature." Although the prosecution of virtually every crime is admittedly cut off at some point in time by the applicable statute of limitations, in the case of sex offenses committed against children, the legislature has expressly and affirmatively chosen to expand, not reduce, the time frame for charging persons such as defendant. Under section 3-6(j) of the Code:

> "[t]he period within which a prosecution must be commenced under the provisions of Section 3-5 or other applicable statute is extended under the following conditions:
>
> * * *
>
> (j) When the victim is under 18 years of age at the time of the offense, a prosecution for criminal sexual assault, aggravated criminal sexual assault, predatory criminal sexual assault of a child, or aggravated criminal sexual abuse or a prosecution for failure of a person who is required to report an alleged or suspected commission of any of these offenses ***, *may be commenced within 10 years after the child victim attains 18 years of age*." (Emphasis added.) 720 ILCS 5/3-6(j) (West 2002).

This provision greatly increases the time available to the State to discover and initiate criminal proceedings for sexual offenses committed against children.[4]

¶ 24    By enacting section 3-6(j), the legislature conclusively established its clear and unambiguous intent to hold the enumerated class of offenders accountable for an extended period by providing for the criminal prosecution of their offenses well beyond the normal time frame. Inherent in the legislature's choice must be the implicit recognition that both youthful victims and their assailants age at the same rate. Thus, it was readily foreseeable that juveniles who commit the offenses listed in section 3-6(j) of the Code could logically be adults before the extended statute of limitations had run on their crimes. Indeed, even if the victim were 17 at the time of the attack, only a very rare defendant would still be under the age of 21, and therefore subject to the Act's protections, 10 years after the victim turned 18 under the extended limitations period in section 3-6 of the Code.

---

[4]While not applicable in the instant case, the legislature subsequently increased the time to initiate prosecutions for the enumerated offenses against child victims from 10 years to 20 years after the child victim turns 18.

¶ 25     Cutting off the State's ability to initiate a prosecution far sooner than was plainly intended under that provision would eviscerate the clear intent of the legislature, creating an absurd result. This we will not do given the plain and unambiguous intent of the language used by the legislature in enacting section 5-120 of the Act and section 3-6 of the Code. *In re Shelby R.*, 2013 IL 114994, ¶¶ 32, 48.

¶ 26     Nonetheless, defendant argues that the enactment of section 3-6's extended limitations period in the Code a year after the Act's section 5-120 was in effect, without an accompanying amendment to section 5-120 authorizing the juvenile court to adjudicate defendants after they turn 21, somehow undermines our conclusion. In making this argument, defendant appears to be attempting to point out a legislative inconsistency, perhaps implying that the extended limitations provision was not intended to apply to youthful defendants who committed the specified offenses while subject to the Act. We find nothing in the statutory language, however, to support that claim. Indeed, it is defendant's interpretation that is inconsistent with the clear intent of the legislature. Moreover, our construction of the Act is preferable because it establishes a fixed and consistent charging time and application of sections 3-6(j) and 5-120, in contrast to the one offered by defendant that would vary depending on the age of the offender.

¶ 27     In the instant case, the victim was 6 years old at the time of the alleged offenses. Pursuant to section 3-6 of the Code, the statute of limitations for charging defendant with her repeated criminal sexual assault and aggravated criminal sexual assault extended until December 10, 2024, when she turned 28.[5] Defendant was charged in 2012, well within the applicable limitations period. We conclude that by retaining the limited authority of the juvenile court under the Act while greatly expanding the State's available time frame for initiating the prosecution of the specified sex offenses, the legislature paved the way for the criminal prosecution of youthful offenders who subsequently "age out of" the juvenile court system.

¶ 28     Nonetheless, defendant also asserts that this court's earlier interpretation of identical language in section 5-120's statutory predecessors (Ill. Rev. Stat. 1967, ch. 37, ¶¶ 702-2, 702-7) supports his view, citing several cases that used the minor's age at the time of the offense to determine the viability of an adult prosecution. *People v. Clark*, 119 Ill. 2d 1, 13-14 (1987); *People v. J.S.*, 103 Ill. 2d 395, 401-04 (1984); *In re Griffin*, 92 Ill. 2d 48, 50-53 (1982); *In re Greene*, 76 Ill. 2d 204, 212-13 (1979). He adds that the legislature's failure to change the statutory language in response to those decisions suggests its acquiescence to their holdings.

¶ 29     As defendant admits in his brief, however, the cited decisions do not involve the precise issue presented here: the propriety of prosecuting a defendant who was over the age of 21 when charged in criminal court for offenses allegedly committed while he was a minor. Our review also shows that the factual and legal context of those cases further distinguish them from the instant one.

¶ 30     In *Clark*, 119 Ill. 2d at 14-16, this court concluded that it was an abuse of the trial court's discretion in ruling on a discretionary transfer petition to fail to consider the difference in the 14-year-old defendant's potential sentences in juvenile and criminal court if convicted of two murders. In juvenile court, the minor could have been incarcerated until the age of 21, but in criminal court he would have received a mandatory sentence of natural life in prison. Based on

_____

[5]P.A. was born on December 10, 1996, making her 18 on that date in the year 2014. Section 3-6 then allows an additional 10 years for the State to initiate its prosecution.

the extreme sentencing disparity, we held the defendant's transfer hearing was inadequate. Here, however, we are not reviewing the propriety of a transfer order to criminal court because no transfer from juvenile court was available when the instant defendant, then 23 years old, was charged. We are considering whether prosecution in criminal court is even possible for defendant, not whether the trial court properly considered all relevant factors in using its discretion to order transfer pursuant to an admittedly applicable provision.

¶ 31 Next, in *J.S.*, 103 Ill. 2d at 401-05, we upheld the constitutionality of the mandatory transfer of certain juvenile offenders to criminal court for trial. Although that precise issue is clearly inapposite, our express recognition in *J.S.* that no constitutional right to juvenile court proceedings exists is highly relevant here. As we noted, the legislature possesses "the authority to define the limits of juvenile court jurisdiction" and is entitled to "redefin[e] the applicability of a statute which it created under its legislative power" by altering the age limits for juvenile and adult court proceedings. *J.S.*, 103 Ill. 2d at 402, 406. Contrary to defendant's claims, those statements of law reinforce, not undermine, our construction of section 5-120 in this case.

¶ 32 Defendant also cites *In re Griffin*, 92 Ill. 2d at 50-52, in support. In that case, we were called on to determine whether a defendant who was 12 when he was adjudicated delinquent but 13 when he was sentenced could be committed to the Juvenile Department of Corrections (DOC) under a statute allowing juveniles who were at least 13 to be sent to the DOC. Similar to our conclusion in this case, we relied on the plain language of the statute to hold that the relevant point in time was the entry of the commitment order, upholding the transfer to the DOC. While we indicated in *dicta* that "[t]he sections providing that a minor may be transferred from juvenile court for prosecution as an adult contain express language making transfer dependent upon the minor's age at the time he committed the offense" (*Griffin*, 92 Ill. 2d at 52), that statement is insufficient to resolve the question here. Because the Act applies only to minors, our statement is applicable only to those charged while minors. Here, defendant was undoubtedly an adult when he was initially prosecuted and, thus, not subject to the protections of the Act.

¶ 33 Finally, in *Greene*, 76 Ill. 2d at 212, this court held that age is not an element of proof needed to support a finding of delinquency but rather "merely the factor which authorizes the application of the juvenile system." Recognizing that the juvenile court is simply a division of the circuit court, we noted that age is not a jurisdictional requirement, unlike subject matter jurisdiction. *Greene*, 76 Ill. 2d at 213-14. The age limit on juvenile court adjudication is set solely by the statutory language enacted by the legislature. Therefore, if, as in this case, a defendant's age places him outside the scope of the Act, the court has no authority to proceed under the Act. That holding is not inconsistent with our conclusion in this case.

¶ 34 Defendant next complains that our construction of section 5-120 violates the rule of lenity by failing to construe a criminal statute in favor of the accused. Critically, the rule of lenity applies only to statutes containing "grievous ambiguities," leaving us unable to do more than merely "guess" the legislature's intent. *People v. Gutman*, 2011 IL 110338, ¶¶ 43-44. When a statute is silent on a particular point, we focus on the legislature's intent, and we will not interpret statutory silence in a way that defeats the purpose of that provision. *People v. Garcia*, 241 Ill. 2d 416, 422-23 (2011). If the statutory language is unambiguous, we will not resort to additional statutory construction tools. *In re Commitment of Fields*, 2014 IL 115542, ¶ 32. Because the key sentence in section 5-120 is sufficiently clear and unambiguous when

construed in light of the definition of "minor" enacted by the legislature in the Act, we need not merely "guess" at the intent of the legislature. The rule of lenity is inapplicable.

¶ 35    Arguing that section 5-120 could in fact be deemed ambiguous, defendant cites to the conflicting results among this case, *People v. Richardson* (2014 IL App (1st) 122501, ¶¶ 13-16, *pet. for leave to appeal pending*, No. 118028 (filed July 28, 2014)), and *People v. Rich* (2011 IL App (2d) 101237, ¶¶ 8-17). The latter decisions held that no one over 21 could be prosecuted in criminal court for acts allegedly committed before the age of 17 in the absence of a timely juvenile court transfer petition or an express statutory exception. Both *Richardson* and *Rich* rely on a dissent filed in *In re Luis R.*, 239 Ill. 2d 295, 307-09 (2010) (Freeman, J., dissenting, joined by Burke, J.).

¶ 36    In *Luis R.*, a majority of this court reversed the dismissal of the State's delinquency petition because the trial court improperly relied on a lack of jurisdiction. Concluding that both subject matter and personal jurisdiction existed, the majority reinstated the petition and remanded the cause for further proceedings. The dissenting justices disagreed because they would have addressed the validity of the State's petition rather than relying on the trial court's jurisdictional error. After characterizing the Act as both providing for the protection and special treatment of juveniles and precluding the imposition of criminal penalties on them, the dissent found "[t]he Act by its own language does not apply to" the defendant Luis R. because he was over 21 when the proceedings were instituted. Therefore, the dissent would have sustained the dismissal of the State's delinquency petition on the alternate ground that the trial court lacked adjudicatory authority over the defendant under the Act. *Luis R.*, 239 Ill. 2d at 308-09 (Freeman, J., dissenting, joined by Burke, J.).

¶ 37    In *Rich*, the appellate court reviewed the dismissal of an indictment on two counts of aggravated criminal sexual assault filed in adult criminal court against the 21-year-old defendant for acts he allegedly performed between the ages of 12 and 14. Initially, the court affirmed the dismissal order because the indictment was legally defective for criminally charging the defendant with acts he committed before the age of 13 (720 ILCS 5/6-1 (West 2008)). *Rich*, 2011 IL App (2d) 101237, ¶ 7. The court went on, however, to affirm the dismissal for an additional reason as well, considering the substantive question of whether an adult defendant could be charged in criminal court for offenses allegedly committed before the age of 15. *Rich*, 2011 IL App (2d) 101237, ¶ 8.

¶ 38    In that discussion, the court did not rely extensively on the *Luis R.* dissent, citing it solely for the inoffensive proposition that defendants are no longer subject to the Act or entitled to its special protections and treatment after they reach the age of 21. *Rich*, 2011 IL App (2d) 101237, ¶¶ 9, 10. The appellate court then examined the four exceptions to section 5-120's bar on the prosecution of minors under the age of 17, concluding none were applicable. *Rich*, 2011 IL App (2d) 101237, ¶¶ 10-12. Ultimately, the court appears to have rested its holding that the defendant could not be prosecuted in criminal court on the ground that the State failed to pursue its initial criminal petition against the defendant, filed when he was 20 years old and still subject to the Act, and instead relied on a superseding indictment, identical to the first, filed when he was 21 and no longer subject to the Act. *Rich*, 2011 IL App (2d) 101237, ¶¶ 4, 15-16. Thus, despite the appellate court's brief allusion to the dissent in *Luis R.*, the facts and determinative legal reasoning in *Rich* are readily distinguishable from the instant case.

¶ 39　　　In contrast, *Richardson* extensively discussed this court's decision in *Luis R.* as well as the subsequent appellate decision, *In re Luis R.*, 2013 IL App (2d) 120393. Reading *Luis R.* and *Rich* together, the court concluded they "essentially create[d] a class of over-21 defendants who can no longer be prosecuted either in juvenile or adult court for certain crimes they allegedly committed as minors." *Richardson*, 2014 IL App (1st) 122501, ¶ 9. The court found the dissent in *Luis R.* "not only helpful, but highly persuasive" "regarding the merits of [the] closely related issue" presented in *Richardson*. *Richardson*, 2014 IL App (1st) 122501, ¶ 13. In addition, the court rejected the statutory analysis conducted in the instant case by a different division of the First District Appellate Court. *Richardson*, 2014 IL App (1st) 122501, ¶ 15.

¶ 40　　　Instead, the *Richardson* court applied the rule of lenity to read the last sentence of section 5-120 as barring the criminal prosecution of the defendant, who was 29 years old, because he was no longer subject to the Act. Because that conclusion is diametrically opposed to the one reached earlier in this decision (*supra* ¶ 34), we reject that rationale.

¶ 41　　　Moreover, the reasoning in *Richardson* appears to have been influenced by the appellate court's concerns that the State could intentionally delay prosecutions "to sidestep the beneficial and age-sensitive remedies available to juveniles and elevate the scope of possible punishments to the more severe levels applicable in the adult system." *Richardson*, 2014 IL App (1st) 122501, ¶ 15. In *Rich*, the court mentioned similar concerns, stating that "radically different sentences for the same crime, committed at the same age, might result merely from the passage of time before being charged." *Rich*, 2011 IL App (2d) 101237, ¶ 9. Here, defendant restates the same policy considerations.

¶ 42　　　Specifically, defendant argues that our construction of section 5-120 creates an incentive for the State to delay prosecution until a juvenile defendant turns 21 and can be tried in adult criminal court, where he no longer has the benefit of the Act's protections and preferential treatment. He adds that a criminal trial under those circumstances would inevitably raise difficult new procedural questions, such as whether a defendant has the right to discover why charges were not filed against him until after he turned 21. Under the facts of this case, however, any discussion of those matters would be merely advisory because the police and the State were undisputedly not aware of any potential charges against defendant until they were notified of his possible sexual abuse of P.A. by Indiana police, who unexpectedly uncovered the information while interviewing another of his cousins. Charges were filed against defendant within days after the Mt. Prospect police first became aware of the allegations. At that time, defendant was already over 21 and no longer subject to the Act. Because the courts of this state may not properly issue advisory opinions to provide guidance to future litigants (*Luis R.*, 239 Ill. 2d at 299 n.1), we decline to speculate on the possibility that the State could intentionally delay filing initial charges until a defendant turned 21 to ensure a prosecution in criminal court.

¶ 43　　　Finally, defendant argues that his due process rights were violated because he could face a much longer prison term in adult criminal court than could have been imposed in juvenile court for the same offenses. Defendant is accused of two counts of aggravated criminal sexual assault, a nonprobationable Class X felony offense in criminal court, and two counts of criminal sexual assault, a Class 1 felony. He asserts that in criminal court he could be sentenced to prison terms of 6 to 30 years on each of the Class X felony counts, with an additional 4 to 15 years possible on each of the Class 1 felony counts, with all the sentences

mandated to run consecutively.[6] In contrast, the maximum sentence that could have been imposed in juvenile court was only six years because he would no longer be subject to juvenile court sanctions when he turned 21.

¶ 44    The State counters that in *People v. Patterson*, 2014 IL 115102, this court rejected a similar due process claim addressing Illinois's automatic transfer scheme. That statute provided for the mandatory transfer to criminal court of certain juveniles over the age of 14 charged with the specified offenses. The defendant in that case argued the statute violated due process because the transfers subjected teens to significantly harsher adult punishments without any consideration of their inherent differences. *Patterson*, 2014 IL 115102, ¶ 89. Here, defendant asserts that this case involves a different statutory provision, partially distinguishing the legal issues in *Patterson*.

¶ 45    While section 5-120 was not at issue in *Patterson*, the same concern pervades the arguments raised by both the defendants in *Patterson* and the instant case: juvenile offenders tried in adult criminal court could potentially be subjected to harsher adult punishments without proper consideration of their unique physical and mental characteristics. As we discussed in *Patterson*, the need to consider juveniles' unique characteristics was recognized in the eighth amendment context by this court in *People v. Miller*, 202 Ill. 2d 328, 341-42 (2002), and by the United States Supreme Court in *Roper v. Simmons*, 543 U.S. 551 (2005), *Graham v. Florida*, 560 U.S. 48 (2010), and *Miller v. Alabama*, 567 U.S. ___, 132 S. Ct. 2455 (2012). *Patterson*, 2014 IL 115102, ¶¶ 97-98. Neither that Court nor this one, however, has ever held that the failure to address the inherent differences between teen and adult offenders creates a due process violation when a teen is potentially subjected to a prison sentence involving a term of years rather than the death penalty or natural life in prison. *Patterson*, 2014 IL 115102, ¶¶ 97-98. It is also important not to forget that even if defendant had been charged at the time of the alleged offenses, he undoubtedly could have been tried as an adult in criminal court under the Act's discretionary transfer provision (705 ILCS 405/5-805(3) (West 2004)). Because defendant offers no additional persuasive basis to justify the reconsideration of our prior case law, we reject his due process claim.

¶ 46    As in *Patterson*, 2014 IL 115102, ¶ 111, however, we recognize the inherent tension and potential for perceived unfairness between juvenile dispositions and the comparatively harsh punishments defendants may face in criminal court for offenses allegedly committed as juveniles. Accordingly, the legislature is encouraged to reevaluate section 5-120 in light of this court's decision.

¶ 47                                 III. CONCLUSION

¶ 48    For the reasons stated, we affirm the appellate court's judgment reversing the dismissal of the indictment against defendant. Section 5-120 of the Act does not bar the prosecution of defendant in criminal court for offenses he allegedly committed when he was 14 or 15 but was

---

[6]The State contends defendant faces a maximum sentence of 60 years, rather than the 90 years defendant claims, because the two Class 1 felonies and two Class X felonies are subject to the rule of merger when based on the same acts. For purposes of our analysis, however, the precise number of years defendant faces in prison, if convicted, is immaterial. Suffice it to say that defendant is subject to a total prison sentence in criminal court that is significantly longer than the maximum sentence he could have received in juvenile court.

not charged with until he was over 21 and no longer subject to the Act. Accordingly, we affirm the judgment of the appellate court and remand the cause to the trial court for further proceedings.

¶ 49   Appellate court judgment affirmed.

¶ 50   Cause remanded.